[Crim. No. 785.   Fourth Dist.   Aug. 27, 1953.]

THE PEOPLE, Respondent, v. FRANK GALWAY, Appellant.

Henry W. Hache for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant and a Mrs. Osburn were charged with conspiracy to commit a crime by advertising that a drug would have an effect in the treatment of cancer, in violation of sections 26286.5 and 26295 of the Health and Safety Code. In the second count they were charged with conspiring to commit a crime by conspiring to do an act injurious to the public health, in violation of section 182.5 of the Penal Code, by delivering to Sena Cassidy and George Reinke a drug for the cure of cancer and inducing said persons to apply such drugs externally, such acts being injurious to the public health, to wit, the health of those persons and others. A jury found both defendants guilty on both counts, and the defendant Galway has appealed from an order denying his motion for a new trial.

Mr. Reinke was a roomer at the home of Mrs. Cassidy. They first saw Mrs. Osburn at the funeral of Mr. Reinke's son. The next day, Mrs. Osburn called at their home ostensibly to console Mr. Reinke on the death of his son. In a conversation, mostly about cancer, she told them that she had nursed cancer, told a number of stories concerning cancer, and told them about a man who was curing cancer with a salve. Mrs. Cassidy told her about a bump on her arm that was beginning to bother her. Mrs. Osburn told Mrs. Cassidy she knew she had cancer the moment she looked at her. Mrs. Osburn looked at the bump and told Mrs. Cassidy that this man could cure a cancer, and induced Mrs. Cassidy to embark on the treatment. A day or two later, Mrs. Osburn brought the appellant, whom neither Mrs. Cassidy nor Mr. Reinke had previously seen, to their home and the treatment was begun shortly thereafter. Both the appellant and Mrs. Osburn told Mrs. Cassidy that she must have cancer because all lumps were cancer, and that the salve was the treatment for it. The appellant applied the salve to Mrs. Cassidy's arm "to draw out the cancer." The appellant noticed a brown spot on Mr. Reinke's right ear, which Mr. Reinke had not mentioned, and told him that it was a skin cancer and that he could take it off in 10 days' time. Mr. Reinke told him that a doctor had looked at it and said it amounted to nothing. Since the salve treatment did not involve cutting,

Mr. Reinke agreed to it, and Mrs. Osburn assisted the appellant in applying the salve to Mr. Reinke's ear.

The appellant told these parties that they could pay whatever they could afford whenever they were able, and they paid the appellant and Mrs. Osburn several payments amounting to $30. The appellant and Mrs. Osburn continued to apply the salve to both of these parties over a period of several weeks. Mrs. Cassidy testified that after the treatment commenced the pain was so terrific she was unable to sleep at night. The fourth day she was ''sick all over'' and was unable to get up. There was an eruption on her arm and considerable suppuration. When told about the pain the appellant and Mrs. Osburn told Mrs. Cassidy that ''when the cancer is out it will quit hurting''; that the suppuration was ''the cancer coming out''; and that if she stopped using the salve she would have cancer elsewhere. The appellant told them that the salve was very expensive and indicated that it came from a foreign region but would not reveal its formula. Three weeks later, some small red spots appeared on Mrs. Cassidy's leg. The appellant told her there must be poison there and to put some salve on it, and keep putting it on. The more she applied the salve the worse the infection became. Mrs. Cassidy finally stopped using the salve and as the lump still remained on her arm she went to a hospital where she was told that she did not have cancer. When she returned the appellant wanted her to use another salve, but she refused. Appellant then asked her if she had any of the salve left. Instead of giving him the remainder of the salve, she and Mr. Reinke turned over the jars of salve they had been using to an inspector for the State Board of Health.

Mr. Reinke also had trouble sleeping after the treatment began and in about 24 hours after the first application his ear began burning so severely he could scarcely stand it. A bad odor emanated and wherever the salve was applied there was suppuration. In about five weeks a sizable portion of his ear dropped off. The appellant then told him he was full of cancer and it was a good thing appellant saw him. At the time of the trial Mr. Reinke was still having trouble with his ear.

Two neighbors testified as to suffering and bad appearance they observed with respect to both patients while the treatments were still in progress. Several expert witnesses testified as to what drugs were found in the salve thus used on these persons, and as to the effects such drugs would have. Briefly

summarized, it appears from this testimony that these salves contained three drugs which were either poisonous or a blistering agent and which would cause violent irritation with destruction of the tissues; that used in combination, as they were in these salves, these drugs would not only destroy tissue but break down the structure of cells and liquefy them; that they would destroy all live cells, making no differentiation between healthy and unhealthy cells; that used over a period of three months there would be considerable destruction of the tissues; and that they would destroy all living cells "with the possible exception of bone."

When apprehended, the appellant told a food and drug inspector that he had been warned about using this salve by a state officer two years before and had discontinued all cancer salve activity; that he had manufactured none during the past two years; that Mrs. Osburn had worked with him and helped him several times when he had treated patients; and that he had not furnished the salve to these individuals but someone gave it to them. He later said that Mr. Reinke and Mrs. Cassidy wanted some of the salve for their cancers and he gave it to them; that in treating internal cancer he applied the salve to the outer surface of the body and the salve would draw the cancer out; that he had cured many cancers in San Diego County; and that he had ceased all cancer activity following two warnings that it was illegal.

Mrs. Osburn testified that she had known the appellant for 20 months, and that the first time she met him she went with him to observe one of these cancer cases; that when complaint was made of Mrs. Cassidy's arm and Mr. Reinke's ear there was a discussion of cancer and she told them that she knew a man who had a salve that might be able to help them; that she understood from appellant that the salve was supposed to "draw the roots of the cancer to the surface"; that Mrs. Cassidy once gave her some money to give to the appellant; and that on two occasions she herself applied the salve to Mr. Reinke. The appellant testified that he never asked Mrs. Osburn to go out with him and treat anybody for cancer; that she went because she wanted to; that he diagnosed cancer by what the patient told him; that he had no formal education along the line of medicine; that it is a simple thing to cure cancer; and that "I can teach any 15-year-old kid so that they can take off cancer."

The appellant first contends that the evidence is not sufficient to warrant a conviction on either count. It is con-

tended that there is no evidence of any agreement or understanding between the appellant and Mrs. Osburn which contemplated advertising the drug in question or that they contemplated injury to Mrs. Cassidy or Mr. Reinke, or the public; and that on the other hand, the evidence shows that the defendants really believed they could help Mrs. Cassidy and Mr. Reinke after they were asked to do so. It is further argued in this connection that the term "advertising," as used in section 26286.5 of the Health and Safety Code, means only some form of written or printed advertisement, and that there was no evidence that these persons were injured or suffered harm in any way.

■ Section 26286.5 of the Health and Safety Code prohibits the advertisement of a drug or device represented to have any effect in the treatment of cancer; section 26295 makes a violation of any provision of that chapter a misdemeanor; and section 26209 defines "advertisement" as meaning, among other things, all representations "disseminated in any manner or by any means, for the purpose of inducing . . . the purchase of drugs . . ." The statute is broad enough to cover oral representations, which were conclusively shown to have been made here. ■ The evidence, with the reasonable inferences which may be drawn therefrom, was sufficient to show that the appellant and Mrs. Osburn were working together under some form of agreement or understanding for the purpose of representing that this salve would cure cancer, and of inducing people to undergo treatment at the appellant's hands for that purpose. There was ample evidence of injury to these parties resulting from the acts of the appellant and Mrs. Osburn working together.

A further contention, that the information failed to state a cause of action because the advertising referred to in the statute means only something that is printed or written, which affects only the first count, requires no further consideration.

■ It is next contended that section 26286.5 of the Health and Safety Code is unconstitutional because it abridges free speech, and denies due process of law in that it prevents a defendant from establishing the truth of his claim with respect to the drugs being advertised. This contention is without merit. Section 26273 of that code removes the prohibition against advertising whenever the value of the drug in question is established in the manner provided by law.

The appellant had an opportunity to establish the merit of his product and all the requirements of due process were met.

Appellant's final contention is that the court erred ''in giving instructions on conspiracy, by lengthy and repetitious and contradictory instructions which were not segregated as to various phases of conspiracy, which had no place in this trial.'' While the instructions on conspiracy are lengthy, it is not pointed out in what respects they were repetitious or contradictory. We find nothing contradictory in them and no more repetition than was reasonably necessary to fully explain the law in this regard. Neither error nor prejudice appears in this connection.

The order denying appellant's motion for a new trial is affirmed.

Mussell, J., concurred.