[L.A. No. 31471. Sept. 7, 1982.]

FORD DEALERS ASSOCIATION et al., Plaintiffs and Appellants, v. DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants.

**348**

352

**COUNSEL**

Lawrence Silver for Plaintiffs and Appellants.

George Deukmejian, Attorney General, and John J. Crimmins, Deputy Attorney General, for Defendants and Appellants.

John K. Van de Kamp, District Attorney (Los Angeles), and Harry B. Sondheim, Deputy District Attorney, as Amici Curiae on behalf of Defendants and Appellants.

OPINION

**BIRD, C. J.**—This case concerns a challenge to five regulations promulgated by appellants, the Department of Motor Vehicles and the director of the department (hereafter, the DMV). The DMV appeals from a trial court order declaring the regulations invalid and granting an injunction against their enforcement.

I.

Section 1651 of the Vehicle Code authorizes the director of the DMV to adopt rules and regulations "as may be necessary to carry out the provisions" of the Vehicle Code. In November of 1977, the DMV filed an order adopting approximately 24 new regulations, all relating to division 5 of the Vehicle Code, Occupational Licensing and Business Regulations. (See Veh. Code, §§ 11100-12104.)[1]

In December of 1977, Ford Dealers Association (hereafter, the Ford Dealers), an association of approximately 132 automobile dealers, brought an action for declaratory and injunctive relief, alleging that 7 of the new regulations were invalid because they were beyond the scope of the authorizing statutes and/or unconstitutional.[2] (See former Gov. Code, § 11440, establishing a procedure for obtaining a judicial declaration as to the validity of an administrative regulation.) The trial court issued a temporary restraining order barring enforcement of the challenged regulations, and, in May of 1978, issued a preliminary injunction restraining the DMV from enforcing the regulations.

---

[1] Unless otherwise indicated, all references are to the Vehicle Code.

[2] The DMV demurred to the original complaint, claiming that the association lacked standing to challenge the regulations. Without conceding the validity of this argument, the Ford Dealers amended the complaint to add a second association and 13 individual automobile dealers as plaintiffs.

In July of 1979, after a two-day hearing, the trial court found the seven regulations invalid on various statutory and constitutional grounds and issued a permanent injunction against their enforcement. The court also awarded sanctions against the DMV for an alleged failure to respond adequately to a request for admissions. The DMV challenges the trial court rulings as to five of the contested regulations and as to the sanctions. The Ford Dealers appeal from a trial court evidentiary ruling.

## II.

■ The court's role in reviewing administrative regulations adopted pursuant to the former Administrative Procedure Act is a limited one.[3] "First, our task is to inquire into the legality of the challenged regulation, not its wisdom. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) Second, in reviewing the legality of a regulation adopted pursuant to a delegation of legislative power, the judicial function is limited to determining whether the regulation (1) is 'within the scope of [the] authority conferred' ([former] Gov. Code, § 11373) and (2) is 'reasonably necessary to effectuate the purpose of the statute' ([former] Gov. Code, § 11374). Moreover, 'these issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with the strong presumption of regularity accorded administrative rules and regulations.' (*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 175 [70 Cal. Rptr. 407, 444 P.2d 79].) ■ And in considering whether the regulation is 'reasonably necessary' under the foregoing standards, the court will defer to the agency's expertise and will not 'superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision.' (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832 [27 Cal. Rptr. 19, 377 P.2d 83].)" (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687]; see also *Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244]; *International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal. 3d 923, 931, fn. 7 [163 Cal.Rptr. 782, 609 P.2d 1].)

As the court noted in *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d at page 411, "although these rules have been

[3]The former Administrative Procedure Act (see former Gov. Code, §§ 11371-11445) was repealed and reenacted in 1979, effective July 1, 1980. (Stats. 1979, ch. 567, §§ 1-9, pp. 1778-1795; see Gov. Code, §§ 11340-11370.5.)

often restated, it would be well to remember that they are not merely empty rhetoric." Where the Legislature has delegated to an administrative agency the responsibility to implement a statutory scheme through rules and regulations, the courts will interfere only where the agency has clearly overstepped its statutory authority or violated a constitutional mandate.

The five regulations at issue here were adopted pursuant to a legislative delegation of authority found in section 1651. All five were designed to implement section 11713, subdivision (a), which bars the dissemination of false or misleading statements to the public.[4] This statute was passed as a remedial statute, designed to protect the public. "[T]he dominant concern of this statutory scheme is that of protecting the purchaser from the various harms which can be visited upon him by an irresponsible or unscrupulous dealer." (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 920 [80 Cal.Rptr. 89, 458 P.2d 33].) "Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; see also *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 111 [101 Cal.Rptr. 745, 496 P.2d 817].) As a remedial statute, it must be liberally construed "to effectuate its object and purpose, and to suppress the mischief at which it is directed." (*California State Restaurant Assn.* v. *Whitlow* (1976) 58 Cal.App.3d 340, 347 [129 Cal.Rptr. 824].)

A. *Regulation 402.00, Advertising Defined*

Regulation 402.00 provides as follows: "402.00 'Advertising' Defined. (a) In the broad context of Vehicle Code Section 11713(a), any statement advertised refers to any statement, representation, act or announcement intentionally communicated to any member of the public by any means whatever, whether orally, in writing or otherwise.

---

[4]Section 11713, subdivision (a) provides as follows: "It shall be unlawful and a violation of this code for the holder of any license issued under this article: [¶] (a) To make or disseminate or cause to be made or disseminated before the public in this state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading; or to so make or disseminate or cause to be so disseminated any such statement as part of a plan or scheme with the intent not to sell any vehicle or service so advertised at the price stated therein, or as so advertised."

"(b) As used elsewhere in the Vehicle Code and in this article, the terms 'advertising', 'advertisement', or 'advertise' refer to a statement, representation, act or announcement intentionally communicated to the public generally for the purpose of arousing a desire to buy or patronize." (Cal. Admin. Code, tit. 13, § 402.)

■ Prior to 1970, subdivision (a) of section 11713 provided that it was unlawful for a licensed automobile dealer to "intentionally publish or circulate any advertising which is misleading or inaccurate . . . ." In 1970, the present version of the section was enacted, providing that it is unlawful "[t]o make or disseminate . . . before the public in this state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement which is untrue or misleading . . . ." (Stats. 1970, ch. 522, § 2, p. 1017; see *ante,* p. 356, fn. 4, for complete text of statute.)

The DMV argues that this revision of section 11713, subdivision (a) indicated a legislative intent to broaden the reach of the statute to include oral representations, as well as media advertising. This argument has merit. The deletion of the requirement that statements be "publish[ed] or circulate[d]" indicates that the Legislature intended to broaden the statutory prohibition. Indeed, the statute now makes it unlawful to disseminate untrue or misleading statements before the public by any manner or means whatever. Broader language would be difficult to find.

■ The Ford Dealers argue that the dual definition of "advertise" in regulation 402.00 is internally inconsistent and not justified by the language of the authorizing statutes. Although "advertise" is used frequently elsewhere in the Vehicle Code, it generally is used in a manner which clearly indicates that it refers only to media advertisements. For instance, section 11713, subdivision (c) requires a dealer "within 48 hours in writing to withdraw any advertisement of a vehicle that has been sold or withdrawn from sale." However, in subdivision (a), "advertised" is used only in the final clause; the body of the subdivision refers generally to statements made or disseminated to the public, a definition broad enough to include oral statements to individual members of the public. Thus, both the history of section 11713, subdivision (a) and its language provide support for the DMV's conclusion that "advertise" as used in that subdivision has a different definition than in the rest of the Vehicle Code.

■ The Legislature's choice of this particular language is significant. Section 11713, subdivision (a) closely parallels the language of Business and Professions Code section 17500.[5] Section 17500 repeatedly has been interpreted so as to include within its reach oral statements made to individual members of the public. Thus, in *Chern* v. *Bank of America* (1976) 15 Cal.3d 866 [127 Cal.Rptr. 110, 544 P.2d 1310], this court held that a member of the public had a cause of action under section 17500 when a bank employee made misleading statements to her over the telephone about the rate of interest on a loan. Similarly, in *People* v. *Superior Court (Jayhill)* (1973) 9 Cal.3d 283 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191], this court found that a complaint charging that encyclopedia salespeople made misrepresentations to individual purchasers was sufficient to state a cause of action for a violation of section 17500. (See also *People* v. *Bestline Products, Inc.* (1976) 61 Cal.App.3d 879, 922-924 [132 Cal.Rptr. 767].) And in *People* v. *Conway* (1974) 42 Cal.App.3d 875 [117 Cal.Rptr. 251], the Court of Appeal upheld a criminal conviction for a violation of section 17500 based on the finding that representatives of an automobile dealership had made false or misleading statements to individual customers.[6]

These judicial interpretations of similar language in a code section covering the same problem—false and misleading statements to the

[5]Business and Professions Code section 17500 provides as follows: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, *to make or disseminate or cause to be made or disseminated before the public in this state*, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, *in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement*, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, *which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading*, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both." (Italics added.)

[6]In addition, former Health and Safety Code section 26209, which barred false or misleading statements "disseminated in any manner or by any means" was held to be "broad enough to cover oral representations ...." (*People* v. *Galway* (1953) 120 Cal. App.2d 45, 49 [260 P.2d 212]; *People* v. *Schmitt* (1957) 155 Cal.App.2d 87, 102 [317 P.2d 673].)

public—are persuasive in this case. ■ Words with an accepted judicial interpretation should be given the same interpretation in statutes dealing with the same subject matter. (*Kuntz* v. *Kern County Employees' Retirement Assn.* (1976) 64 Cal.App.3d 414, 422 [134 Cal.Rptr. 501].) ■ Here, the Legislature has chosen to use the same broad language in two similar statutes. Prior interpretations of Business and Professions Code section 17500 should be followed both because they are of precedential value and because they present a reasonable and persuasive interpretation of the disputed language.

The one published Court of Appeal decision considering this aspect of section 11713, *Feather River Trailer Sales, Inc.* v. *Sillas* (1979) 96 Cal.App.3d 234, 248-249 [158 Cal.Rptr. 26], came to the same conclusion. Noting that "[t]he issue need not be belabored," the court held that one-to-one statements fall within the reach of the statute. "The term 'advertised' as it is used in the Vehicle Code sections before us, is nowhere specifically defined in that code. Historically, however, the terms advertising and 'advertisement' have been held to be broad enough to include oral representations made on a one-to-one basis.... [¶] We hold, therefore, that the trial court erred in concluding that the one-on-one discussions between plaintiffs and the [customers] could not come within the statutory meaning of the term 'advertising.'" (*Ibid.*)

■ The Ford Dealers argue that this interpretation of section 11713, subdivision (a) brings it into conflict with section 11705, subdivision (a)(14), which authorizes suspension of a dealer's license when the licensee has caused any person to suffer as a result of "fraudulent representations." They label this section a "specific" provision covering misrepresentations made to individuals, and assert that it prevails over the general provisions of section 11713, subdivision (a).

However, the Ford Dealers ignore the crucial distinctions between the two statutes. While the statute barring "fraudulent representations" requires actual reliance on the misrepresentations, section 11713, subdivision (a) penalizes the making or dissemination of the statements, regardless of how they are received by the customer. "It has been recognized in recent years that the evils of deceptive advertising cannot be reached effectively if legislation to that end is interpreted to require proof of actual reliance upon a false statement knowingly made ...." (*Webster* v. *Board of Dental Examiners* (1941) 17 Cal.2d 534, 541 [110 P.2d 992].) Section 11713, subdivision (a) is far broader than the statute relied on by the Ford Dealers. There is no conflict between the

statutes, and no basis for concluding that either one supersedes the other.

■ The Ford Dealers' contention that section 11713, subdivision (a) does not authorize the DMV to penalize licensed dealers for the statements of their employees must also be rejected. The courts have repeatedly held that licensees are responsible for the acts of their employees. "'The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license . . . .' By virtue of the ownership of a . . . license such owner has a responsibility to see to it that the license is not used in violation of law." (*Cornell* v. *Reilly* (1954) 127 Cal.App.2d 178, 186-187 [273 P.2d 572]; *Camacho* v. *Youde* (1979) 95 Cal.App.3d 161 [157 Cal.Rptr. 26]; *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1973) 33 Cal.App.3d 732, 737 [109 Cal.Rptr. 291].)

The settled rule that licensees can be held liable for the acts of their employees comports with the general law governing principal-agent liability. "An agent represents his principal for all purposes within the scope of his actual or ostensible authority . . . ." (Civ. Code, § 2330.) When a licensed dealer places salespeople in the position to work with customers, the dealer is responsible for the actions of those employees.

In *Feather River Trailer Sales, Inc.* v. *Sillas, supra*, 96 Cal.App.3d 234, the Court of Appeal interpreted section 11713, subdivision (a) as incorporating the standard concept of principal-agent liability. In that case, a corporation was held liable for the misleading oral statements of a salesperson. In support of this interpretation of the statute, the DMV notes that a violation of section 11713, subdivision (a) is grounds for the revocation of a salesperson's license. (See § 11806, subd. (d).) In addition, the DMV notes that many licensed automobile dealerships are corporate entities. To hold section 11713, subdivision (a) applicable only to the statements of licensed dealers would gut the statute of much of its force.[7]

In a similar fashion, cases construing Business and Professions Code section 17500 have consistently held business managements liable for

---

[7]In another context, the Ford Dealers recognize that a statute that specifically applies to the acts of licensed dealers also governs the actions of the dealers' employees. They concede without discussion that section 11705 applies to salespeople as well as licensed dealers. However, the language of section 11705 is identical to that of section 11713. Both refer only to licensed dealers. If, as the Ford Dealers concede, section 11705 applies to salespeople, section 11713 must as well.

the acts of their agents. The bank in *Chern* v. *Bank of America, supra*, 15 Cal.3d 866 was held liable for the statements of its employees. The corporation in *People* v. *Superior Court (Jayhill), supra*, 9 Cal.3d 283 was held liable for the acts of its salespeople. And in *People* v. *Conway, supra*, 42 Cal.App.3d 875, the Court of Appeal upheld the criminal conviction of the president of an automobile dealership, based in part on the false and misleading statements of his employees. The court found the evidence "sufficient to show that appellant, as president of Pasadena Motors, was in a position to *control* the activities of the dealership and thus could be held criminally liable for false advertising." (*Id.*, at p. 886, italics in original. See also *Goodman* v. *Federal Trade Commission* (9th Cir. 1957) 244 F.2d 584, 590-593 [corporation liable for acts of salespeople under statute barring "unfair or deceptive acts or practices in commerce"].)[8]

The Ford Dealers argue that cases construing Business and Professions Code section 17500 are not on point because that section specifically applies to "all persons" making misleading statements. However, the Ford Dealers misunderstand the DMV's citation to these cases. The decisions in *Chern, Jayhill* and *Conway* all held employers liable for the statements of their employees. The fact that under the statute the employees might have been held liable as individuals was not necessary to the conclusion that liability should be imputed to their employers. Thus, cases finding that Business and Professions Code section 17500 incorporates the concept of principal-agent liability are relevant to the interpretation of section 11713, subdivision (a).

The facts of *People* v. *Conway, supra*, 42 Cal.App.3d 875, demonstrate the importance of principal-agent liability. There, the district

---

[8]The imputation of liability to the employer is based on the assumption that a licensed dealer is in a position to control the actions of salespeople. Consequently, it is held to be fair to impute to the employer liability for the violations of employees. (See, e.g., *In re Marley* (1946) 29 Cal.2d 525 [175 P.2d 832].) However, where a dealer is able to demonstrate unusual circumstances that negate the presumption of control, it might be unfair to hold that dealer liable for the misrepresentations of salespeople. Mere lack of knowledge would not suffice, where a dealer appeared to have tolerated misleading statements in the past or created a climate in which such misstatements were likely to occur. However, a dealer might be able to defend against an action under section 11713, subdivision (a) by demonstrating that it made every effort to discourage misrepresentations; had no knowledge of salespeople's misleading statements; and, when so informed, refused to accept the benefits of any sales based on misrepresentations and took action to prevent a reoccurrence.

In this case, only the validity of the administrative regulation holding employers liable, in general, for the statements of their employees is at issue. In the absence of a specific factual setting raising the question, the court need not decide the exact dimensions of a possible exception to that general rule.

attorney had received over 500 complaints about defendant's business transactions. Defendant himself did not personally make many of the statements on which liability was based. However, the court found him liable for the numerous illegal acts of his employees. Only through imposing liability on the licensee can such conduct be effectively controlled.

The DMV properly construed section 11713, subdivision (a) to apply to the one-to-one statements of salespeople, as well as those of the dealers themselves. Therefore, the trial court erred in finding regulation 402.00 invalid.

### B. *404.03, Dealer Added Charges*

■ Regulation 404.03 provides as follows: "Dealer Added Charges. A dealer may not identify a separate charge or charges for services performed on vehicles prior to delivery to the extent the dealer is or will be reimbursed for such expenditures by another party. If a dealer does identify a separate charge or charges for delivery and preparation services performed over and above those delivery and preparation obligations specified by the franchisor and for which the dealer is to be reimbursed by the franchisor, then the services performed and the charges therefor shall be separately itemized. Such added charges must be included in the advertised price." (Cal. Admin. Code, tit. 13, § 404.03.)

The trial court held this regulation invalid as beyond the scope of the authorizing statute, section 11713, subdivision (a). The DMV contends that the regulation is designed to prevent a specific kind of misleading statement, and as such is authorized by the broad statutory prohibition against false and misleading statements. The Ford Dealers argue both that the regulation goes beyond the scope of the statute and that it bars statements that are not in fact false or misleading.

■ An administrative agency is not limited to the exact provisions of a statute in adopting regulations to enforce its mandate. "[T]he absence of any specific [statutory] provisions regarding the regulation of [an issue] does not mean that such a regulation exceeds statutory authority . . . ." (*Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651, 656 [128 Cal.Rptr. 881, 547 P.2d 993]; *Ralphs Grocery Co.* v. *Reimel, supra*, 69 Cal.2d at p. 176, fn. 3.) ■ The DMV is authorized to "'fill up the details'" of the statutory scheme. (*Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 376 [71 Cal.Rptr. 687, 445 P.2d 303].) A regu-

lation barring a specific class of misleading statements falls within the authority of the DMV under this statute.

In addition, the DMV clearly has the discretion to decide that statements such as those at issue here are inherently misleading. Interpreting the identical language of Business and Professions Code section 17500, this court said, "a statement is false or misleading if members of the public are likely to be deceived.... 'The statute affords protection against the probability or likelihood as well as the actuality of deception ....' [Citations.]" (*Chern* v. *Bank of America, supra*, 15 Cal.3d at p. 876; see also *Fletcher* v. *Security Pacific National Bank* (1979) 23 Cal.3d 442, 451 [153 Cal.Rptr. 28, 591 P.2d 51].) It is within the authority of the DMV to conclude that consumers confronted with an itemized charge for services performed on their automobile will assume that they are paying extra to purchase those specific services. Where that is not in fact the case, because the dealer has already been paid for the services, the DMV could reasonably conclude that such an itemized charge is inherently misleading.

The trial court's ruling that regulation 404.03 is beyond the scope of the agency's authority was erroneous.

### C. *Regulation 403.02, subdivision (b), Rental Vehicles*

██ The Ford Dealers next challenge subdivision (b) of regulation 403.02, which requires a seller to "clearly identif[y]" a vehicle as a rental vehicle if the seller knows that it previously was so used.[9] The trial court found that the DMV had the authority to issue a regulation requiring disclosure of the history of a used car, but held that there was insufficient evidence in the administrative record to demonstrate the necessity for disclosure of the rental history.

The Ford Dealers renew their claim that the DMV was not authorized to require the affirmative disclosure of a vehicle's history. However, the omission of crucial information can be as misleading as a di-

---

[9]Regulation 403.02 provides in full: "403.02 Vehicle History. (a) Express advertisements of a vehicle's prior use or ownership history must be accurate. [¶] (b) Former taxicabs, rental vehicles, publicly owned vehicles, insurance salvage vehicles and revived salvage vehicles shall be clearly identified as such if the previous status is known to the seller. [¶] (c) If a vehicle is advertised and/or sold as a 'demonstrator' and such a vehicle has been previously registered or sold to a retail purchaser, the selling dealer shall clearly disclose to the buyer the fact of such prior registration or sale before obtaining the buyer's signature on a purchase order or sales contract." (Cal. Admin. Code, tit. 13, § 403.02.)

rect misstatement of fact. Where, in the absence of an affirmative disclosure, consumers are likely to assume something which is not in fact true, the failure to disclose the true state of affairs can be misleading. (Cf. *Encyclopaedia Britannica, Inc.* v. *F.T.C.* (7th Cir. 1979) 605 F.2d 964, 971-973 [F.T.C. can order affirmative disclosures in order to avoid deception].) Section 11713, subdivision (a) does not require proof of actual deception, only the probability or likelihood of deception. (Cf. *Chern* v. *Bank of America, supra*, 15 Cal.3d at p. 876; *Fletcher* v. *Security Pacific National Bank, supra*, 23 Cal.3d at p. 451.) The DMV could reasonably conclude that consumers are likely to be deceived if they are not informed that the automobile they are purchasing was formerly used in certain specified ways.

The trial court concluded, however, that there was no evidence in the record to support the decision to require disclosure of rental history. The Ford Dealers argue that rental cars are better serviced and maintained than privately owned cars, and that it is thus arbitrary and capricious to require disclosure of rental history.

It is well to remember that it is not this court's role to reweigh the evidence before the administrative agency to determine whether this regulation was warranted. The provisions of the Administrative Procedure Act in effect at the time these regulations were adopted required only that the agency provide interested parties an opportunity to present their views to the agency, with or without an opportunity for oral argument. (See former Gov. Code, § 11425.) ■■ ■■ ■ Judicial review of the record was limited to a determination of whether the challenged regulation was "'entirely lacking in evidentiary support.'" (*Pitts* v. *Perluss, supra*, 58 Cal.2d at p. 833.)[10]

■ The trial court erred in holding that the administrative record contained no evidence to support this regulation. The record contains

[10]The Ford Dealers' assertion that the former provisions of the Administrative Procedure Act (former Gov. Code, §§ 11371-11445) were unconstitutional because they did not require agencies to conduct a full hearing on the merits of proposed regulations is without merit. Administrative rulemaking proceedings are "quasi-legislative" proceedings, and "a hearing of a judicial type is not required .... [¶] There is no constitutional requirement for any hearing in a quasi-legislative proceeding." (*Franchise Tax Board* v. *Superior Court* (1950) 36 Cal.2d 538, 549 [225 P.2d 905]; *California Optometric Assn.* v. *Lackner* (1976) 60 Cal.App.3d 500, 505-509 [131 Cal.Rptr. 744].) Further, where a hearing is provided by law, as it was under former Government Code section 11425, there is no requirement that such a hearing be adversarial. (Cf. *United States* v. *Florida East Coast R. Co.* (1973) 410 U.S. 224, 240 [35 L.Ed.2d 223, 236, 93 S.Ct. 810].) The Ford Dealers were not denied any constitutional right on this administrative record.

testimony indicating that consumers are interested in knowing whether they are buying a rental vehicle. Although the automobile dealers did present evidence indicating that at least some rental vehicles are in better condition than privately owned automobiles, the agency was not bound to conclude that this obviated the need for the regulation. As one consumer advocate testified, the information could be useful to assist the buyer in understanding the vehicle's mechanical condition. In addition, he testified that it was important to a consumer's confidence and "psychological" peace of mind that the consumer know if a vehicle had previously been used for rental, regardless of whether or not that history affected its value.

Thus, there was evidence in the record to support the conclusion that it is misleading to sell a rental vehicle without informing the purchaser of the vehicle's history. ■■ ■■■■ Based on this evidence, the DMV could reasonably decide that the refusal to disclose such information would violate section 11713, subdivision (a).[11]

### D. *Regulations 403.00 and 404.09, Vagueness Challenges*

■■ Finally, the Ford Dealers challenge two regulations, claiming that both are unconstitutionally vague. Regulation 403.00 provides as follows: "403.00 Advertisements. Any advertised statements, representations, or offers made in connection with the sale or attempted sale of any vehicle(s) shall be clearly set forth, and based on facts and shall be subject to these regulations and the Vehicle Code." (Cal. Admin. Code, tit. 13, § 403.00.)

■■ Regulation 404.09 provides: "404.09 Qualifying Statements. Qualifying statements used in connection with vehicle advertisements, including the qualifying statements required by this article, shall be

---

[11]The Ford Dealers argue that the trial court erred in refusing to allow them to present additional evidence as to the reasonableness of this regulation. They submitted an offer of proof indicating that their expert witness was prepared to testify that rental vehicles are in better condition than private vehicles of the same model and year. However, the trial court correctly ruled that the judiciary was limited to an examination of the administrative record in an action challenging an administrative regulation. (*Schenley Affiliated Brands Corp. v. Kirby* (1971) 21 Cal.App.3d 177, 196-197 [98 Cal.Rptr. 609] and cases cited.) In addition, the proferred evidence, even if accepted, did not refute the evidence in the record that consumers are interested in the history of their automobiles and would feel misled if sold a vehicle without being informed that it had been used for rental purposes.

The Ford Dealers' additional claim that this regulation is unconstitutionally vague is disposed of by the holding of the following section, *post*, at pages 365-369.

large enough and displayed for a sufficient period of time to enable the average reader or viewer to comprehend such statements." (Cal. Admin. Code, tit. 13, § 404.09.)

█ The Ford Dealers complain that the phrases "based on facts" and "clearly set forth" are vague. █ In addition, they attack as vague the requirement that statements be "large enough and displayed for a sufficient period of time" so that an "average" person can understand them.

█ Initially, it is important to note that when an administrative regulation is challenged the standard of constitutional vagueness is less strict than when a criminal law is attacked. "In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed." (*Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156, 162 [31 L.Ed.2d 110, 115-116, 92 S.Ct. 839]; *Winters* v. *New York* (1948) 333 U.S. 507, 515 [92 L.Ed. 840, 849, 68 S.Ct. 665] [ █ █ "The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."].)[12] Further,

---

[12]The Ford Dealers argue that this rule of construction should not be applied to section 11713, subdivision (a) because it contains penal sanctions: a violation of section 11713 can be punished as a misdemeanor (see § 40000.11), subject to a fine of $500 and a jail term of up to six months (see Pen. Code, § 19). However, the potential criminal liability associated with a violation of this statute is *not* before the court in this case. The Ford Dealers initiated this case as an action for declaratory and injunctive relief, pursuant to former Government Code section 11440, a provision of the Administrative Procedure Act. As a result, only the civil, administrative aspects of the statute are presently before the court. Questions as to the interpretation of a penal statute should not be addressed in a case litigated under the administrative law. (See *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]. See also *Cal. Emp. Com.* v. *Butte County etc. Assn.* (1944) 25 Cal.2d 624, 630-631 [154 P.2d 892] and *California State Restaurant Assn.* v. *Whitlow, supra*, 58 Cal.App.3d at pp. 346-347 [interpreting remedial statutes liberally in administrative proceedings, although violations of the statutes constituted misdemeanors].)

The Ford Dealers raise two additional arguments in support of their claim that a strict standard of statutory construction should be applied to this case. First, they argue that the regulations at issue here impinge upon constitutionally protected First Amendment rights. The Supreme Court has provided the short and clear answer to this claim. Although commercial speech is protected by the Constitution, false, deceptive or misleading advertising is subject to restraint. (*Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350, 383 [53 L.Ed.2d 810, 835, 97 S.Ct. 2691].) Because regulations governing false and misleading advertising are directed only at unlawful business practices, standard First Amendment cases are not controlling. (*United States* v. *National Dairy Corp.* (1963) 372 U.S. 29, 36 [9 L.Ed.2d 561, 567-568, 83 S.Ct. 594].) Such regulations can be broader than statutes regulating other speech because the danger of a chilling effect on protected speech is not present. (*Ibid.*; *Bates, supra*, 433 U.S. at

when commercial speech is regulated, the United States Supreme Court has been less concerned with the dangers of overbreadth or a chilling effect because of the limited danger of inhibiting speech. (*Bates v. State Bar of Arizona, supra,* 433 U.S. at pp. 380-381, 383 [53 L.Ed.2d at pp. 833-835]. See also *United States v. National Dairy Corp., supra,* 372 U.S. at p. 36 [9 L.Ed.2d at pp. 567-568].)

 The first phrase challenged by the Ford Dealers, "based on facts," easily overcomes a vagueness attack. A statement is based on facts if the speaker knows facts which support the statement. Thus, an advertiser who makes a claim or offer about a vehicle must be aware of facts which support that claim or offer.

The next phrase, "clearly set forth," is somewhat more difficult, because it must be applied in particular factual settings. Viewed in the abstract, it means merely that such statements, representations or offers cannot be hidden or camouflaged. Further explication would depend on a case-by-case evaluation. The courts can "refine and develop standards under the [statute] on a case-by-case basis . . . . [T]his is neither unusual nor unconstitutional." (*Volkswagen Interamericana, S.A. v. Rohlsen* (1st Cir. 1966) 360 F.2d 437, 445.)

Numerous cases from around the country have upheld regulatory statutes despite the presence of phrases of this ilk, which must be refined through application. For instance, the United States Supreme Court rejected a vagueness challenge to a statute penalizing those who forced a broadcaster to hire more personnel than the "number of em-

---

pp. 380-381 [53 L.Ed.2d at pp. 833-834].) Statutes regulating commercial advertising, therefore, need not be strictly construed.

Next, they assert that the statute should be narrowly construed because automobile dealers face revocation of their licenses—and thus potential loss of their livelihood—if they violate the statute. It is true that loss of a license may be a serious punishment. The due process clauses of both the state and federal Constitutions protect the right to employment from arbitrary state interference. (*Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 652 [183 Cal.Rptr. 508, 646 P.2d 179].) However, the state has a strong interest in regulating the licensed professions and clearly may discipline individuals employed in those fields. (*Endler v. Schutzbank* (1968) 68 Cal.2d 162, 170 [65 Cal.Rptr. 297, 436 P.2d 297]; *Camacho v. Youde, supra,* 95 Cal.App.3d at p. 164; *Cornell v. Reilly, supra,* 127 Cal.App.2d at p. 184.) Due process mandates do not necessarily require that the exacting rules of procedure employed in the criminal courts be applied to license revocation procedures. "[T]he overwhelming weight of authority has rejected any analogy which would require [an administrative] board to conduct its proceedings for the revocation of a license in accordance with theories developed in the field of criminal law. [Citations.]" (*Webster v. Board of Dental Examiners, supra,* 17 Cal.2d at p. 538.)

ployees needed." (*United States* v. *Petrillo* (1947) 332 U.S. 1, 6-8 [91 L.Ed. 1877, 1882-1883, 67 S.Ct. 1538].) Similarly, the courts have regularly upheld statutes barring "unfair" competition. (See, e.g., *Fed. Trade Comm.* v. *Raladam Co.* (1931) 283 U.S. 643, 648 [75 L.Ed. 1324, 1329, 51 S.Ct. 587, 79 A.L.R. 1191]; *People* ex rel. *Mosk* v. *National Research Co. of Cal.* (1962) 201 Cal.App.2d 765, 772 [20 Cal.Rptr. 516]. See also *CSC* v. *Letter Carriers* (1973) 413 U.S. 548, 576-579 [37 L.Ed.2d 796, 815-817, 93 S.Ct. 2880] ["actively participating in . . . fund-raising" and taking an "active part in managing" not vague]; *Boyce Motor Lines* v. *United States* (1952) 342 U.S. 337, 341-343 [96 L.Ed. 367, 371-372, 72 S.Ct. 329] ["so far as practicable" not vague]; *Volkswagen Interamericana, S.A.* v. *Rohlsen, supra,* 360 F.2d at p. 445 ["good faith" requirement not vague].)

In a case very similar to the instant situation, the Second Circuit upheld an agency order that a publisher print certain information "in clear, conspicuous type," in a position "adapted readily to attract the attention of a prospective purchaser." (*Bantam Books, Inc.* v. *F.T.C.* (2d Cir. 1960) 275 F.2d 680, 683, cert. den., 364 U.S. 819 [5 L.Ed.2d 49, 81 S.Ct. 51].) The court held that a more specific order would not be feasible, since clarity and conspicuousness would vary with the size, color, placement and design of the publications. "We shall not require the Commission to attempt to devise a universal formula that would take account of all these permutations . . . ." (*Ibid.*) More recently, the Seventh Circuit upheld an order requiring that certain notices be "clearly and conspicuously displayed" in advertising and promotional materials. (*Encyclopaedia Britannica, Inc.* v. *F.T.C., supra,* 605 F.2d at p. 969, cert. den., 445 U.S. 934 [63 L.Ed.2d 770, 100 S.Ct. 1329].)

 These cases also dispose of the vagueness challenge to the requirement that statements be "large enough" and "displayed for a sufficient period of time" so that an "average" person can comprehend them. It would not be possible for the DMV to set forth specific guidelines covering all the possible advertisements that might fall within the mandates of this regulation. The fact that the exact reach of the statute must be determined through application does not thereby render it vague. "[G]eneric terms" like "'nuisance' or 'negligence' . . . must be translated into specific situations of fact in order to be cognizable. The attribute of generality does not of itself, however, require a holding of nullity for vagueness. . . . [¶] [I]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited [citations], since unfair or fraudulent business practices may

run the gamut of human ingenuity and chicanery. . . . What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact [citation], the essential test being whether the public is likely to be deceived [citation]." (*People* ex rel. *Mosk* v. *National Research Co. of Cal., supra*, 201 Cal. App.2d at p. 772.)

Here, the "essential test" is whether the reader or viewer is likely to be deceived or confused by an advertisement that is so small or displayed so briefly that it cannot be understood. This is a reasonable standard to which the industry can reasonably be expected to conform its conduct. It is not vague.

Finally, the regulation's reference to the "average reader or viewer" is not vague. Indeed, the definition of vagueness is often phrased in terms of the "average" person's ability to understand a statute. (See, e.g., *People* v. *Newble* (1981) 120 Cal.App.3d 444, 453 [174 Cal.Rptr. 637].) Further, obscenity laws frequently refer to the "average" citizen. (*Miller* v. *California* (1973) 413 U.S. 15, 24 [37 L.Ed.2d 419, 430-431, 93 S.Ct. 2607]; *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71, 76 [127 Cal.Rptr. 317, 545 P.2d 229].) It is no less fair to ask the advertiser to conform advertisements to the abilities of the average reader or viewer than it is to ask society as a whole to conform to the expectations of the archetypal "reasonable person." Regulations 403.00 and 404.09 are not void on vagueness grounds.

### III.

The DMV appeals from the trial court's imposition of $8,000 in sanctions for "inadequate" answers to two requests for admissions. (See Code Civ. Proc., § 2034, subd. (c).) The Ford Dealers asked the DMV to admit the following: "In the promulgation of the 'Old Regulations' [regulations in effect before 1977] and in the promulgation of the 'New Regulations' [those at issue in this case] no formal fact finding study, investigation survey or other fact finding process was authorized by the Defendant Department of Motor Vehicles, or its agents and employees," and "no report of any formal fact finding study, investigation survey or other fact finding process was received or utilized by the Defendant Department of Motor Vehicles or its agents and employees." The DMV denied these requests for admissions.

These questions asked whether any fact-finding process was authorized by the DMV, and whether the report of any fact-finding process

was received or utilized by the DMV. The investigator who drafted the challenged regulations stated at his deposition that he had utilized comments from other departmental investigators, based on their experiences in the field. This by itself constitutes a "fact finding process" or a "report" of a "fact finding process" sufficient to render the denial of the above admissions true. Sanctions should not have been imposed on the DMV as a result of its denial of these requests for admissions.

## IV.

The prohibition of untrue or misleading statements is one aspect of a statutory scheme designed to protect consumers and deter irresponsible sales practices. In the highly competitive environment of our modern business world, such safeguards are an essential protection against deceptive and unscrupulous business transactions. In keeping with its mandate to implement this statutory scheme through rules and regulations, the DMV has promulgated a series of regulations intended to ensure compliance with the strict language of the statute. These regulations represent a thorough and reasonable effort to implement the statute in a fair and effective manner.

The trial court erred in finding the regulations invalid and in granting an injunction against their enforcement. The judgment is reversed.

Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

Newman, J., concurred in the result.