112 Cal.Rptr.2d 574 (2001)
92 Cal.App.4th 1169
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Plaintiffs and Appellants,
v.
Harry LOW, as Insurance Commissioner, etc., et al., Defendants and Respondents;
Southern Christian Leadership Conference of Greater Los Angeles, Inc. et al., Interveners and Respondents.
No. A093193.
Court of Appeal, First District, Division One.
October 17, 2001.
Review Granted January 16, 2002.
*577 Heller Ehrman White & McAuliffe LLP, La Jolla, Paul Alexander, Vanessa Wells, Victoria Collman Brown, Palo Alto, for Plaintiffs and Appellants.
Bill Lockyer, Attorney General, Randall P. Borcherding, Supervising Deputy Attorney General, Kristian D. Whitten, Deputy Attorney General, for Defendants and Respondents.
Mark Savage, San Francisco, Thorn Ndaizee Meweh, for Interveners and Respondents.
STEIN, Acting P.J.
Proposition 103, an initiative measure enacted in 1988, made fundamental changes in the regulation of automobile and other types of insurance in this state, but left many of the details of its implementation to regulations promulgated by the Insurance Commissioner (Commissioner). (See generally, Calfarm Ins. Co. v. Deukmejian (1989) 48 Cal.3d 805, 258 Cal. Rptr. 161, 771 P.2d 1247; 20th Century Ins. Co. v. Garamendi (1994) 8 Cal.4th 216, 32 Cal.Rptr.2d 807, 878 P.2d 566; Spanish Speaking Citizens' Foundation, Inc. v. Low (2000) 85 Cal.App.4th 1179, 103 Cal.Rptr.2d 75.) This appeal concerns one such regulation, California Code of Regulations, title 10, section 2646.6.[1]
The regulation requires specified insurers to file annually with the Department of Insurance (Department) a "Community Service Statement," reporting certain information for each ZIP code in which the insurer sells insurance or maintains agents. (§ 2646.6, subds.(a), (b).) Subdivision (c) of section 2646.6 makes those statements available for public inspection under Insurance Code section 1861.07. State Farm attacks the validity of subdivision (c) and argues that some of the information in its community service statement is a privileged trade secret exempt from public disclosure.[2]
We conclude that the Commissioner did not exceed his statutory authority in promulgating section 2646.6, subdivision (c). We also conclude that regardless of whether State Farm's community service statements contain trade secrets, section 2646.6, subdivision (c) and Insurance Code section 1861.07 make those statements available for public inspection, and they are not protected from disclosure by the California Public Records Act (Gov.Code, § 6250 et seq.) (Public Records Act) and Evidence Code section 1060.

BACKGROUND

A. Proposition 103

Proposition 103 began with a declaration of findings that "[e]normous increases in the cost of insurance have made it both unaffordable and unavailable to millions of Californians," and that "existing laws inadequately protect consumers and allow insurance companies to charge excessive, unjustified, and arbitrary rates." The initiative's stated purpose included protecting consumers from arbitrary insurance rates and practices, encouraging a competitive insurance marketplace, and ensuring that insurance is fair, available, and affordable for all Californians. The initiative also expressly directed that its terms are to be liberally construed and applied so as to fully promote its underlying purpose. (Stats.1988, pp. A-276, 290, §§ 1, 2, 8.)
*578 Among its terms, Proposition 103 added article 10 to chapter 9 of part 2 of division 1 of the Insurance Code (article 10). The article, consisting of Insurance Code sections 1861.01 through 1861.14, required an immediate reduction of insurance rates and also instituted a prior approval system under which the Commissioner must approve an insurer's rate before its use. (Ins.Code, § 1861.01.) Insurance Code section 1861.05 articulated the substantive standard for prior approval, stating in subdivision (a): "No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter."
The article requires auto rates to be based on an insured's driving safety record, number of miles driven annually, years of driving experience, and other factors approved by the Commissioner. (Ins. Code, § 1861.02.) It also prohibits certain unfair insurance practices and makes the insurance industry subject to the Unruh Civil Rights Act (Civil Code, §§ 51-53) and the state's antitrust and unfair business practices laws (Bus. & Prof.Code, § 16600 et seq.). (Ins.Code, § 1861.03.) In addition, the article contains several general provisions regarding public notice, including Insurance Code section 1861.07, which declares: "All information provided to the commissioner pursuant to this article shall be available for public inspection, and the provisions of Section 6254(d) of the Government Code and Section 1857.9 of the Insurance Code shall not apply thereto."
The details of implementing Proposition 103 by promulgating rules and regulations have been left to the Commissioner. (Calfarm Ins. Co. v. Deukmejian, supra, 48 Cal.3d at p. 824, 258 Cal.Rptr. 161, 771 P.2d 1247; 20th Century Ins. Co. v. Garamendi supra, 8 Cal.4th at p. 245, 32 Cal.Rptr.2d 807, 878 P.2d 566.) We are concerned in this appeal with a regulation promulgated in 1996, which requires certain insurers to file annually with the Department a "Community Service Statement," reporting specified information for each ZIP code in which the insurer sells insurance or maintains agents. That information includes the number of offices, agents, claims adjusters, direct mail or telephone solicitations for new insurance business, agents and claims adjusters conversant in a language other than English, applications for each line of insurance, and applications for which the insurer declined to provide coverage, as well as the race or national origin and gender of each applicant for insurance. (§ 2646.6, subd. (b)(2)(8).)
The community service statement must also divulge for each ZIP code "the total earned exposures and total earned premiums, and the total number of exposures new, exposures canceled and exposures non-renewed," stated separately for various types of coverage. The parties refer to this information as "Record A data." (§ 2646.6, subds.(a), (b)(1).)[3] An "earned exposure" is the unit insured; for example, under an automobile policy, each insured auto is an earned exposure.
The regulation requires the Commissioner to issue an annual "Report on Underserved Communities," designating by ZIP code the communities that the Commissioner finds underserved by the insurance industry based on criteria set forth in the regulation. (§ 2646.6, subd. (c).) The report must also list certain information for each insurance company doing business *579 in the state, including the number and percentage of total exposures the company has in force insuring risks in the underserved communities and in all other communities. (§ 2646, subd. (e)(1).)
In addition to mandating the annual report of aggregate data, subdivision (c) of section 2646.6 makes community service statements available for public inspection under Insurance Code section 1861.07.

B. State Farm's Lawsuit

In December 1999, State Farm filed this action for declaratory and injunctive relief against David "Birny" Birnbaum, the Commissioner, and the Department of Insurance. The complaint alleged that in response to a request under the Public Information Act, the Department had "inadvertently" disclosed to Birnbaum information in State Farm's 1998 community service statement that constituted a privileged trade secret. State Farm sought an injunction restraining Birnbaum from using or disclosing that information, among other relief.
The Southern Christian Leadership Conference of Greater Los Angeles, Inc., and Consumers Union of U.S., Inc. (Interveners) successfully requested leave to intervene in the action. Their complaint in intervention sought a declaration that community service statements submitted by insurers under the regulation are subject to public inspection and not exempt from public disclosure. State Farm subsequently amended its complaint, alleging more precisely that its record A data is trade secret information and seeking to restrain the Commissioner from releasing any information submitted pursuant to section 2646.6 under a claim of confidentiality or trade secret privilege.
The trial court dismissed the action as against Birnbaum and ordered entry of judgment in his favor after granting his special motion to strike under Code of Civil Procedure section 425.16. State Farm filed a notice of appeal from that judgment, but later abandoned the appeal.
The Commissioner moved for summary judgment, arguing that section 2646.6 is a valid regulation implementing Insurance Code section 1861.07, that State Farm's submission of its community service statement was voluntary because the regulations provide for alternatives to the filing of such statements, that State Farm waived any trade secret protection by filing its community service statement, and that State Farm had no standing to assert an exemption from disclosure under the Public Records Act.
Interveners also moved for summary judgment. They reiterated the Commissioner's standing argument, and they urged that section 2646.6, Insurance Code section 1861.07, and the Public Records Act each require public disclosure of State Farm's record A data and that the data is not exempt from disclosure under the Public Records Act. They argued in the alternative that State Farm's record A data is not a trade secret.
The trial court granted both motions, reasoning that the Commissioner and the Department did not exceed their powers in promulgating the regulation and that the community service statements are public records subject to public inspection. In its order granting summary judgment for Interveners, the court also found that there was no triable issue of material fact, that State Farm had made no showing of economic value of the record A data, and that the community service statements and record A data are not a trade secret.
State Farm has appealed from the judgment entered in favor of the Commissioner and Interveners. Pending our consideration of the appeal, this court has temporarily *580 enjoined the Commissioner, the Department, and Interveners from disclosing data, information, or potential trade secrets that State Farm provided under section 2646.6, the record A data.[4]

DISCUSSION

A. Standard of Review

On appeal after the granting of summary judgment, this court independently reviews the record to determine whether there are triable issues of material fact. (Code Civ. Proc., § 437c; Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 861-866, 107 Cal.Rptr.2d 841, 24 P.3d 493; Saelzler v. Advanced Group 400 (2001) 25 Cal.4th 763, 767, 107 Cal.Rptr.2d 617, 23 P.3d 1143.) We also undertake de novo review of the trial court's resolution of any underlying statutory construction issues. (Barrier v. Leeds (2000) 24 Cal.4th 676, 683, 102 Cal.Rptr.2d 97, 13 P.3d 704; Regents of University of California v. Superior Court (1999) 20 Cal.4th 509, 531, 85 Cal.Rptr.2d 257, 976 P.2d 808.)
Statutory construction issues predominate in this appeal. Our basic task in construing statutes is to ascertain the intent of the lawmakers in order to effectuate the purpose of the law. (Torres v. Automobile Club of So. California (1997) 15 Cal.4th 771, 777, 63 Cal.Rptr.2d 859, 937 P.2d 290.) We begin that task by scrutinizing the statutory language. If that language is clear and unambiguous, there is no need for judicial construction. On the other hand, if a statute is capable of two reasonable constructions, it is ambiguous, and we may examine its history and background and apparent purpose in an attempt to ascertain the most reasonable interpretation. (Snukal v. Flight-ways Manufacturing, Inc. (2000) 23 Cal.4th 754, 777-779, 98 Cal.Rptr.2d 1, 3 P.3d 286.) We must also examine the context in which the language appears, adopting the construction that best harmonizes the statute both internally and with related statutes. (People v. Superior Court (Zamudio) (2000) 23 Cal.4th 183, 192-193, 96 Cal.Rptr.2d 463, 999 P.2d 686; California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 642, 59 Cal.Rptr.2d 671, 927 P.2d 1175.) Our obligation is to consider the consequences that might flow from a particular construction and to construe the statute to promote rather than defeat its purpose and policy. (Escobedo v. Estate of Snider (1997) 14 Cal.4th 1214, 1223, 60 Cal.Rptr.2d 722, 930 P.2d 979.)
These principles apply equally in construing statutes enacted through the initiative process. (Day v. City of Fontana (2001) 25 Cal.4th 268, 272, 105 Cal. Rptr.2d 457, 19 P.3d 1196.) To ascertain the legislative intent underlying an initiative, a court may take into account statements to voters such as the analysis by the Legislative Analyst and the arguments in the ballot pamphlets. (People v. Anderson (1987) 43 Cal.3d 1104, 1143, 240 Cal.Rptr. 585, 742 P.2d 1306; Spanish Speaking Citizens' Foundation, Inc. v. Low, supra, 85 Cal.App.4th at p. 1214, 103 Cal.Rptr.2d 75.)

B. Standing

Preliminarily, respondents assert that this court lacks jurisdiction to consider this appeal because State Farm had no standing in the first place to bring an action under the Public Records Act to prevent an agency from disclosing public *581 records in the agency's files. Interveners make a related argument that the judgment is not appealable because orders regarding disclosure under that act are reviewable only by extraordinary writ proceedings. (See Gov. Code, § 6259, subd. (c); Powers v. City of Richmond (1995) 10 Cal.4th 85, 89-90, 40 Cal. Rptr.2d 839, 893 P.2d 1160.)
The standing argument was unsuccessful in the trial court, and it merits little discussion.[5] Whether State Farm would have had standing under the Public Records Act, which authorizes an action to enforce a right to inspect or receive a copy of a public record (see Gov.Code, § 6258), is of no consequence in this appeal. State Farm's action was not a proceeding under that act, but was for declaratory and injunctive relief under Code of Civil Procedure sections 1060 and 526, subdivision (a). "An action for declaratory relief lies when the parties are in fundamental disagreement over the construction of particular legislation, or when they dispute whether a public entity has engaged in conduct or established policies in violation of applicable law." (Alameda County Land Use Assn. v. City of Hayward (1995) 38 Cal. App.4th 1716, 1723, 45 Cal.Rptr.2d 752.) The determination of whether an action is justiciable for purposes of Code of Civil Procedure section 1060 is a matter entrusted to the sound discretion of the trial court. (Application Group, Inc. v. Hunter Group, Inc. (1998) 61 Cal.App.4th 881, 893, 72 Cal.Rptr.2d 73; City of Santa Rosa v. Press Democrat (1986) 187 Cal.App.3d 1315,1323-1324, 232 Cal.Rptr. 445.)
State Farm's complaint alleged a controversy among the parties over the meaning of Insurance Code section 1861.07 and sought a declaration of the validity of section 2646.6, subdivision (c). Interveners' attempt to characterize State Farm's action as an improper Public Records Act proceeding is disingenuous. Their own complaint alleged the existence of a controversy and sought a declaration under Code of Civil Procedure section 1060 that the community service statements filed under the regulation are public records not exempt from disclosure. Declaratory relief was unquestionably appropriate under the circumstances, and the standing argument has no merit.

C. Section 26-6.6, subdivision (c).

We begin our discussion by emphasizing that State Farm's attack on section 2646.6 has a very narrow focus, aimed only at one part of subdivision (c). The regulation is complex. Among its terms, it requires insurers to file community service statements, mandates the inclusion of record A and other data in those statements, defines underserved communities, directs the Commissioner to issue an annual report on those communities, designated by ZIP code, and requires a written explanation by an insurer of any denial of coverage in an underserved community. (§ 2646.6, subds.(a)-(d).) State Farm does not challenge the Commissioner's authority under Proposition 103 to promulgate any of those components or subparts of the regulation. State Farm argues only that the Commissioner exceeded his statutory authority by making community service statements subject to the public disclosure mandate of Insurance Code section 1861.07, and that section 2646.6, subdivision *582 (c), is invalid to the extent that it purports to do so.
State Farm reasons as follows. Insurance Code section 1861.07 applies only to information provided to the Commissioner "pursuant to" article 10. That article deals with rates and rate regulation, and its limited purpose is to ensure that the rate approval process is open and subject to public scrutiny. While many other regulations do implement that process, section 2646.6 is not a rate regulation and community service statements are not submitted with rate applications or for rate approval purposes. Therefore those statements are not submitted "pursuant to" article 10, and subdivision (c) of section 2646.6 is a void attempt to expand the scope of Insurance Code section 1861.07.
State Farm's constricted reading of article 10 is inconsistent both with the provisions of the article and with the directive of Proposition 103 for liberal construction of its terms. While much of the article pertains directly to rates and rate regulation proceedings, it cannot reasonably be read as limited to that subject matter. Courts have recognized that Insurance Code section 1861.03, which is part of article 10, significantly altered existing law by making the business of insurance subject to the state's antitrust and unfair business practice laws and to the Unruh Civil Rights Act. (See Farmers Ins. Exchange v. Superior Court (1992) 2 Cal.4th 377, 385-386, 6 Cal.Rptr.2d 487, 826 P.2d 730; Wilson v. Fair Employment & Housing Com. (1996) 46 Cal. App.4th 1213, 1220, 54 Cal.Rptr.2d 419.) The Unruh Civil Rights Act does not forbid risk-oriented distinctions based on economic as opposed to personal characteristics (Spanish Speaking Citizens' Foundation, Inc. v. Low, supra, 85 Cal. App.4th at p. 1240, 103 Cal.Rptr.2d 75), but it does prohibit discrimination based on protected classifications such as race, color, sex, religion, ancestry, or national origin. (Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1154-1155, 278 Cal.Rptr. 614, 805 P.2d 873; see Beaty v. Truck Ins. Exchange (1992) 6 Cal. App.4th 1455, 1463, 8 Cal.Rptr.2d 593 [Unruh Act does not create a right of insurance access "so long as the insurer's policy is applicable alike to all persons regardless of race, color, sex, religion, etc."].) It is apparent that article 10 encompasses more than rate matters and addresses other factors that may impermissibly affect the availability of insurance.
State Farm's argument also is inconsistent with settled principles governing judicial review of administrative regulations. Courts generally give great weight to the interpretation of an enabling statute by officials charged with its administration, including their interpretation of the authority vested in them to implement and carry out its provisions. (People ex rel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 309, 58 Cal.Rptr.2d 855, 926 P.2d 1042.) This principle applies to the rulemaking power of an administrative agency. Our role in reviewing an administrative regulation is limited. We consider the legality of the regulation, not its wisdom. We determine only whether the regulation is within the scope of the authority conferred and whether it is reasonably necessary to effectuate the statutory purpose. (Ford Dealers Assn. v. Department of Motor Vehicles (1982) 32 Cal.3d 347, 355, 185 Cal.Rptr. 453, 650 P.2d 328.) We recognize, of course, that an administrative agency has no authority to promulgate a regulation in excess of its statutory authority. (Terhune v. Superior Court (1998) 65 Cal.App.4th 864, 873, 76 Cal.Rptr.2d 841.) Nevertheless, when lawmakers have delegated to an administrative agency the responsibility *583 to implement a statutory scheme through rules and regulations, a court will interfere only if the agency has clearly overstepped its statutory mandate. (Masonite Corp. v. County of Mendocino Air Quality Management Dist. (1996) 42 Cal.App.4th 436, 447, 49 Cal.Rptr.2d 639.) When considering whether a regulation is reasonably necessary, a court will defer to the agency's expertise and not superimpose its own policy judgment absent an arbitrary and capricious decision. (Ford Dealers Assn. v. Department of Motor Vehicles, supra, at p. 355, 185 Cal.Rptr. 453, 650 P.2d 328.) Furthermore, an agency is not limited to the exact provisions of a statute in adopting regulations to enforce its mandate; instead, an agency often must fill in the details of a statutory scheme. (Id. at p. 362, 185 Cal.Rptr. 453, 650 P.2d 328.)
These general principles apply to the Commissioner's power to implement Proposition 103. The Supreme Court has remarked specifically on the Commissioner's broad discretion to adopt rules and regulations as necessary to promote the public welfare. (Calfarm Ins. Co. v. Deukmejian, supra, 48 Cal.3d at pp. 824-825, 258 Cal.Rptr. 161, 771 P.2d 1247; 20th Century Ins. Co. v. Garamendi, supra, 8 Cal.4th at p. 245, 32 Cal.Rptr.2d 807, 878 P.2d 566.) The court also has emphasized that the Commissioner's powers are not limited to those expressly conferred by statute; rather, he or she may exercise such additional powers as are necessary for the efficient administration of powers expressly granted by statute or as may fairly be implied from the statute granting the powers. (Id, at p. 245, 32 Cal.Rptr.2d 807, 878 P.2d 566.)
As we have stated, article 10 is not only about rates and rate regulation; it also concerns other factors that may impermissibly affect the availability of insurance. State Farm itself acknowledges that community service statements provide information to the Commissioner about service and access to insurance. It was well within the authority of the Commissioner to conclude that requiring insurers to submit the information contained in those statements would facilitate his obligations to implement and enforce article 10. State Farm's argument that the community service statements are not submitted to the Commissioner "pursuant to" that article is not persuasive.[6]

D. The Public Records Act

State Farm argues that even if section 2646.6, subdivision (c) is valid and Insurance Code section 1861.07 applies generally to community service statements, its record A data is a trade secret protected from disclosure under the Public Records Act and Evidence Code section 1060.
The Public Records Act provides that "every person has a right to inspect any public record, except as hereafter provided." (Gov.Code, § 6253, subd. (a).) A public record under the act is "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (Gov.Code, § 6252, subd. (e).) The act was adopted for the explicit purpose of increasing freedom of information by giving the public access to information in possession of public agencies. (Roberts v. City of Palmdale (1993) 5 *584 Cal.4th 363, 370, 20 Cal.Rptr.2d 330, 853 P.2d 496.)
Nevertheless, the Public Records Act exempts certain public records from disclosure, including information received in confidence by any state agency responsible for the regulation or supervision of banks, savings and loan associations, industrial loan companies, credit unions, and insurance companies. (Gov. Code, § 6254, subd. (d)(1), (3).) Also exempt are "[r]ecords the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov.Code, § 6254, subd. (k).) By its reference to the privileges in the Evidence Code, the act makes those privileges applicable to public records. (See Roberts v. City of Palmdale, supra, 5 Cal.4th at p. 370, 20 Cal.Rptr.2d 330, 853 P.2d 496 [attorney-client privilege applies to public records].)
Evidence Code section 1060 establishes the privilege to protect a trade secret, providing as follows. "If he or his agent or employee claims the privilege, the owner of a trade secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." According to Evidence Code section 1061, subdivision (a)(1), a "trade secret" means a trade secret as defined in Civil Code section 3426.1, subdivision (d).[7] The latter section, which is part of the Uniform
Trade Secrets Act (Civ.Code, § 3426 et seq.), defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (l)[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2)[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ.Code, § 3426.1, subd. (d)(1), (2).)
Arguing that Insurance Code section 1861.07 does not compel disclosure of its trade secrets, State Farm reasons as follows. That section expressly states that the exemptions from disclosure established by Government Code section 6254, subdivision (d), and Insurance Code section 1857.9 do not apply to information submitted to the Commissioner under the article.[8] But Insurance Code section 1861.07 does not mention the exemption established by Government Code section 6254, subdivision (k) for privileged information, and an exception for that exemption cannot be implied. (See, e.g., Mountain Lion Foundation v. Fish & Game Com. (1997) 16 Cal.4th 105, 116, 65 Cal.Rptr.2d 580, 939 P.2d 1280 [where exceptions are specified by statute, other exceptions are not to be presumed].)
We disagree with State Farm's characterization of Insurance Code section 1861.07 as a statute creating exceptions to *585 a general rule. On the contrary, we read that statute as declaring a general rule without exceptions. In plain language, the first clause of the statute proclaims an unconditional and unambiguous rule that all information submitted to the Commissioner under article 10 is available for public inspection. The second clause buttresses that general rule by adding that Government Code section 6254, subdivision (d) and Insurance Code section 1857.9, which would otherwise provide confidentiality for certain insurance data reports, shall not apply to such information. Government Code section 6254, subdivision (d), is sufficiently broad in scope to encompass trade secrets. When a statute announces a general rule and makes no exceptions to that rule, a court is ordinarily not authorized to create an exception or add a qualifying provision not intended by the lawmakers. (Stockton Theatres, Inc. v. Palermo (1956) 47 Cal.2d 469, 476, 304 P.2d 7; Bruce v. Gregory (1967) 65 Cal.2d 666, 674, 56 Cal.Rptr. 265, 423 P.2d 193.) State Farm would have us read Insurance Code section 1861.07 as providing that all confidential information submitted under article 10 is available for public inspection except trade secrets, but that is not what the statute says, and we are not free to imply an exception in the statute where none appears.[9]
Roberts v. City of Palmdale, supra, 5 Cal.4th 363, 20 Cal.Rptr.2d 330, 853 P.2d 496, is of no assistance to State Farm; instead, the case reinforces our conclusion that it is inappropriate to read an exception into Insurance Code section 1861.07. Roberts involves a party who sought disclosure under the Public Records Act of a city attorney's letter to the city council concerning approval of a parcel map. The Supreme Court held that the city council could assert the attorney-client privilege as incorporated by Government Code section 6254, subdivision (k), even though there was no pending litigation as required for the exemption created by subdivision (b) of that section. The court rejected the argument that subdivision (b) limited the attorney-client privilege in the context of public records to matters actually in litigation. Accepting that argument would require reading subdivision (k) as impliedly recognizing all privileges defined by the Evidence Code except the attorney-client privilege, and "[i]t is not our function ... to add language or imply exceptions to statutes passed by the Legislature. [Citations.]" (Roberts, supra, at p. 372, 20 Cal. Rptr.2d 330, 853 P.2d 496.)
In any event, even if we were to accept State Farm's strained interpretation of Insurance Code section 1861.07, Uribe v. Howie (1971) 19 Cal.App.3d 194, 96 Cal. Rptr. 493 supports a conclusion that the privilege for trade secrets still would not protect State Farm's record A data. The tension between that privilege and the Public Records Act was squarely presented in Uribe. A farm worker sought to inspect reports from pest control operators to the county agricultural commissioner, which detailed the type and dosage of pesticide sprayed in several locations, among other information. Commercial pesticide operators intervened, arguing that the reports were trade secrets exempt from disclosure under the Public Records Act. (Uribe, supra, at pp. 198-199, 96 Cal.Rptr. 493.)
The trial court denied disclosure, but the appellate court reversed, holding in part that even if the reports were trade secrets within the meaning of the Government *586 and Evidence Codes, they were not exempt from disclosure.[10] (Uribe v. Howie, supra, 19 Cal.App.3d at p. 210, 96 Cal. Rptr. 493.) The court emphasized that under Evidence Code section 1060 itself, the privilege for trade secrets is not absolute, but is allowed only when nondisclosure "would not tend to conceal fraud or otherwise work injustice." The court concluded that a balancing of the public interest served by nondisclosure against that served by disclosure is necessary to determine whether nondisclosure will be allowed. After weighing those interests, it concluded that the public interest would be far better served by disclosure. (Id. at pp. 206-207, 210-211, 213, 96 Cal.Rptr. 493; see also San Gabriel Tribune v. Superior Court (1983) 143 Cal.App.3d 762, 776-777, 192 Cal.Rptr. 415 [privilege should be applied on clear showing that disclosure is against the public interest].)
State Farm argues that Uribe v. Howie, supra, 19 Cal.App.3d 194, 96 Cal.Rptr. 493 is inapplicable because it was decided under the former Restatement of Torts definition of a trade secret, before California enacted the Uniform Trade Secret Act. First, that act itself provides: "This title does not affect the disclosure of a record by a state or local agency under the California Public Records Act.... Any determination as to whether the disclosure of a record under the California Public Records Act constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this title." (Civ.Code, § 3426.7, subd. (c).) What is more important, regardless of whether the definition of a trade secret has changed since Uribe was decided, Evidence Code section 1060 has not, and it is that statute which establishes the conditional privilege for trade secrets.
We conclude that on balance, the public interest is better served by disclosure of State Farm's record A data than by nondisclosure. The Supreme Court has emphasized that the insurance industry is highly regulated and that "`[i]t is no longer open to question that the business of insurance is affected with a public interest.' "(Calfarm Ins. Co. v. Deukmejian, supra, 48 Cal.3d at p. 830, 258 Cal.Rptr. 161, 771 P.2d 1247, citing Carpenter v. Pacific Mut. Life Ins. Co. (1937) 10 Cal.2d 307, 329, 74 P.2d 761.) For many years, consumer groups and others have accused the insurance industry of various practices that result in depriving racial minorities and other disadvantaged groups of access to affordable insurance. (See generally, King v. Meese (1987) 43 Cal.3d 1217, 1237-1240, 240 Cal.Rptr. 829, 743 P.2d 889 (cone. opn. of Broussard, J.); see also Williams, "The Wrong Side of the Tracks": Territorial Rating and the Setting of Automobile Liability Insurance Rates in California (1992) 19 Hastings Const. L.Q. 845; Rice, Race, Gender, "Redlining," and the Discriminatory Access to Loans, Credit, and Insurance: An Historical and Empirical Analysis of Consumers Who Sued Lenders and Insurers in Federal and State Courts, 1950-1955 (1996) 33 San Diego L.Rev. 583.) The public disclosure of all the information in the community service statements, including where insurers are and are not selling policies, will unquestionably serve the public interest by illuminating the debate over these practices and clarifying the scope of the problem.
State Farm has not demonstrated a strong countervailing public interest in *587 nondisclosure. State Farm asserts the hypothetical possibility that a competitor with access to its record A data could use this information to target its customers in a regional marketing strategy, and it urges that the dominant public policy here is nondisclosure of trade secrets. However, the law is otherwise. Courts have consistently held that the Public Records Act expresses a policy generally favoring disclosure of public records, and the statutory exceptions are to be narrowly construed. (See, e.g., Citizens for a Better Environment v. Department of Food & Agriculture (1985) 171 Cal.App.3d 704, 711, 217 Cal.Rptr. 504; Rogers v. Superior Court (1993) 19 Cal.App.4th 469, 476, 23 Cal. Rptr.2d 412.)
To summarize, we conclude that the Commissioner did not exceed his statutory authority in promulgating section 2646.6, subdivision (c), that both the regulation and Insurance Code section 1861.07 make community service statements, including record A data, available for public inspection. In addition, we conclude that even if State Farm's record A data is a trade secret, it is not exempt from disclosure under Government Code section 6254, subdivision (k) and Evidence Code section 1060. Therefore we need not consider State Farm's argument that there was a triable issue of fact as to whether its record A data is a trade secret. Our conclusions also make it unnecessary to consider respondents' argument that State Farm waived any protection for its alleged trade secrets by filing a community service statement instead of proceeding under other regulations permitting submission of a "Strategic Plan for Underserved Communities" or "Evidence Demonstrating an Existing Presence in Underserved Communities" in lieu of a community service statement. (Cal.Code Regs., tit. 10, §§ 2646.7, subd. (a), 2646.8, subd. (a).)

DISPOSITION
The judgment is affirmed.
We concur: SWAGER, J., and MARCHIANO, J.
NOTES
[1] All subsequent references to section 2646.6 are to title 10 of the California Code of Regulations.
[2] Our reference to State Farm is a collective reference to appellants State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, and State Farm General Insurance Company.
[3] The regulation applies to each insurer writing in excess of $10 million in any one of several lines of insurance, including private passenger automobile liability and physical damage and certain homeowners multiple peril, commercial multiple peril, commercial automobile liability, and fire policies. (§ 2646.6, subds.(a), (b)(1).)
[4] By separate order issued today, the stay will remain in effect until issuance of the remittitur.
[5] In their motion for summary judgment, Interveners urged as a preliminary matter that State Farm had no standing under the Public Records Act to prevent disclosure of public records. By reaching the merits of the parties' claims and granting the declaratory relief requested by Interveners and the Commissioner, the trial court impliedly rejected this standing argument.
[6] State Farm requests that we take judicial notice of the following: (1) a bill was pending in the Legislature that would have codified the requirements of section 2646.6 for the collection and disclosure of data; and (2) a legislative committee has voted against that bill. We deny the request.
[7] Under Evidence Code section 1061, subdivision (a)(1), the term "trade secret" also means "trade secret" as defined in Penal Code section 499c, subdivision (a)(9).
[8] Insurance Code section 1857.9 requires insurers to report information specified by the Commissioner that is collected by a licensed advisory organization on an annual basis for each class of insurance designated by the Commissioner in the prior calendar year as generally unavailable or unaffordable in the state or for which there have been unusually great premium increases. (Id. subds. (a), (b).) Subdivision (i) provides that the information shall be confidential and not revealed by the department, except that the commissioner may publish an analysis of the data in aggregate form or in a manner that does not disclose confidential information about identified insurers or insureds.
[9] At State Farm's request, we have taken judicial notice of the Cobey Song Evidence Act (Stats. 1965, ch. 299), but it has no bearing on our interpretation of Insurance Code section 1861.07.
[10] As an alternative ground for its opinion, the Uribe court also held that the reports were not trade secrets. (Uribe v. Howie, supra, 19 Cal.App.3d at pp. 206-210, 96 Cal.Rptr. 493.)