Filed 4/8/15  Clark Pacific v. Occupational Safety and Health Appeals Bd. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CLARK PACIFIC, | C075477 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 34201080000640CUWMGDS) |
| OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, | |
| Defendant and Respondent; | |
| DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, | |
| Real Party in Interest and Respondent. | |

In July 2007 Moises Cordero, an employee of plaintiff Clark Pacific (Clark), was injured when a gantry crane ran over his foot and ankle, resulting in the amputation of his lower leg.  Real party in interest Department of Industrial Relations, Division of Occupational Safety and Health (Division) issued a citation charging Clark with a serious

1

violation of a safety standard. Defendant Occupational Safety and Health Appeals Board (Board) upheld the Division's citation of Clark for violating California Code of Regulations, title 8, section 4906, subdivision (b), failure to guard the crane's wheels.[1] Clark filed a petition for a writ of mandate, which the trial court denied. Clark appeals, arguing the safety standard at issue does not apply to the circumstances of Cordero's accident and the trial court committed several prejudicial errors. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

**The Accident**

Clark manufactures precast walls, floors, and structural membranes. The company also installs these components at construction sites. On July 10, 2007, Cordero was working as a "groundsman" for Clark, responsible for rigging precast concrete panels to a gantry crane, helping to direct the movement of the crane, and making sure no other workers were in the crane's path. A Clark loading superintendent/foreman, Jack Bohling, operated the gantry crane.

The accident occurred when Cordero and Bohling were moving precast concrete panels to be loaded onto trailers. While moving the concrete panel, the gantry crane made contact with Cordero and knocked him to the ground. The crane tire rolled onto his foot and upper ankle, then reversed and rolled off his leg. The gantry crane, including its load, weighed approximately 100,000 pounds. The crane operated on rubber tires. Cordero's injuries resulted in the amputation of his foot and lower leg.

The gantry crane's tires are 48 inches in diameter. Each tire has a small metal bar guard, located about halfway up, approximately 20 to 24 inches above the ground. Clark's cranes run on an asphalt surface. A Division inspector conducted an

---

[1] All further section references are to title 8 of the California Code of Regulations unless otherwise designated.

investigation of the accident site and issued four citations to Clark.[2]  The Division
inspector testified that it would have been practical to lower the guards to about one-half
inch above the ground.  The Division inspector also stated that the guard on the crane
involved in the accident did not meet the requirements of the safety order.  The guard
failed to prevent an employee from being struck and rolled over by the tire.

Clark's safety director, Garlon Prewitt, stated that the crane operates on both
asphalt and sandy surfaces; therefore, a one-half inch guard height would not be practical.
However, Prewitt conceded that a guard four inches off the surface would be practicable
on asphalt surfaces, and a guard six inches above the surface would be practicable on
sandy surfaces.

**Subsequent Events**

Clark appealed the citations.  After a three-day evidentiary hearing, an
administrative law judge issued a decision dismissing two of the citations and affirming
two of the citations, including the section 4906 citation.  Clark filed a petition for
reconsideration with the Board.  The Board denied the petition.

Clark filed a petition for a writ of mandate in the trial court.  The trial court issued
a tentative ruling.  Following oral argument, the court affirmed the tentative ruling,
denying the petition for a writ of mandate.  Following notice of entry of judgment, Clark
filed a timely notice of appeal.

**DISCUSSION**

**Standard of Review**

A party may seek judicial notice of a final decision of the Board by filing a
petition for a writ of mandamus.  (Lab. Code, § 6627.)  Labor Code section 6629 limits
the scope of the trial court's review of the Board's decision to a determination of whether

---

[2]  In this appeal, Clark challenges only the citation under section 4906.

3

the Board acted in excess of its powers; the order was procured by fraud; the order was unreasonable; the order was not supported by substantial evidence; or, if findings of fact were made, whether such findings support the order under review. Our function on appeal is the same as that of the trial court in ruling on the petition for the writ. (*Teichert Construction v. California Occupational Safety & Health Appeals Bd.* (2006) 140 Cal.App.4th 883, 887-888 (*Teichert Construction*).)

We review the Board's fact finding under the substantial evidence test. We do not review the evidence de novo or exercise our independent judgment on the evidence. Instead, we review the evidence in the light most favorable to the administrative agency, giving it every reasonable inference and resolving all conflicts so as to support the agency's findings. (Lab. Code, § 6629; *Teichert Construction*, *supra*, 140 Cal.App.4th at pp. 887-888.) If the Board's findings are supported by inferences that may fairly be drawn from the evidence even though the evidence is susceptible to opposing inferences, we will not disturb the decision. (*Riskin v. Ind. Acc. Com.* (1943) 23 Cal.2d 248, 254.)[3]

In addition, when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great weight and be followed unless clearly erroneous. The Board is an agency equipped and informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of expertness that we do not possess and therefore must respect. (*Davey Tree Surgery Co. v. Occupational Safety & Health Appeals Bd.* (1985) 167 Cal.App.3d 1232, 1243-1244.)

**The Citation**

The citation charged Clark with a violation of section 4906, which is entitled "Truck Wheel Guards and Railsweeps." The citation specifically referred to

---

[3] We grant the request for judicial notice filed by the Board on August 20, 2014.

section 4906, subdivision (b) but quoted subdivisions (b) and (c) of the safety standard: "(b) Gantry, tower, hammerhead, or portal crane trucks and wheels shall be equipped with wheel guards or be otherwise similarly guarded at both ends of each truck to prevent a person being crushed beneath the wheels. The clearance between the guard and the rail or running surface shall be such as will afford maximum protection against crushing injuries. Wherever practicable, one half of an inch clearance shall be maintained.

"(c) Container-handling, rubber-tired, gantry cranes shall be guarded with wheel fenders, bumpers or skirt guards which shield each wheel to the front and rear extended to the lowest practicable level above ground."

The citation provided the following facts to support the violation: "At the Clark Pacific . . . facility . . . a traveling gantry crane with an employer ID # 406 being used to lift and move what the employer referred to as Double T forms was not equipped with adequate wheel guards to prevent a person from being crushed beneath the wheels which is what occurred on July 10, 2007 when an employee was struck by a crane tire, knocked down and his foot crushed underneath the tire resulting in an accident related serious injury to the employee." The violation was classified as "serious," and the Division assessed a penalty of $18,000 against Clark.

**Clark's Objections to the Citation**

On appeal, Clark renews the series of objections to the citation it argued before the administrative law judge and the trial court. Clark argues the citation refers to section 4906, subdivision (b), which does not apply to the gantry crane involved in this case.

Clark does not dispute the crane involved was a gantry crane. Clark contends the term "rail or running surface" used in section 4906, subdivision (b) is a term of art and limits the coverage of the section to gantry cranes that operate on such a surface. The gantry crane in question, Clark argues, operated throughout the plant on rubber tires, not

5

on a rail or running surface. Instead, section 4906, subdivision (c) is the safety standard that applies to the crane in question.

We join the administrative law judge and the trial court in rejecting this interpretation of the provision. As with statutes, we give words in a regulation their ordinary meaning. As used in subdivision (b), the term "running surface" simply describes where a crane operates. It does not limit the scope of the provision to cranes operating on some specialized surface and is broad enough to include a gantry crane, such as the crane involved in the present mishap, that operated on asphalt and sandy surfaces.

The trial court noted it gives the Board's interpretation of the regulations it enforces great weight unless the interpretation is clearly erroneous or unauthorized. Accordingly, the trial court found it was reasonable to apply the term "running surface" in section 4906, subdivision (b) to the paved and unpaved surfaces upon which the crane in the present case operated.

We agree. The Board's rejection of Clark's construction of section 4906, subdivision (b) was not clearly erroneous or unauthorized. Section 4906, subdivision (b) states that the clearance between the guard "and the rail *or* running surface shall be such as will afford maximum protection against crushing injuries." (Italics added.) This use of the disjunctive supports the Board's interpretation that "running surface" is something different and distinct from "rail." Clark provides no support for considering the term "running surface" as a technical term or term of art defined elsewhere in the regulation. Therefore, the Board's interpretation of "running surface" in light of its ordinary meaning, as the surface of any type on which the gantry crane runs, is reasonable and not clearly erroneous. We agree with the trial court that the Board acted reasonably to apply

6

the term "running surface" to the paved and unpaved surfaces upon which the gantry crane in the present case operated.[4]

Clark also argues the Labor Code demands specificity. The trial court rejected Clark's claim that the Board's interpretation was so vague that it failed to give employers proper notice as to what they must do to comply with the regulation. We also reject Clark's notice claim. Section 4906, subdivision (b) unequivocally states that wheels on gantry cranes must be guarded in such a manner that the clearance between the guard and the running surface, including paved and unpaved surfaces, must afford maximum protection against crushing injuries. We find section 4906, subdivision (b) provides adequate notice.

The trial court also found the Board's conclusion that the wheels of Clark's gantry crane were not guarded as required by section 4906, subdivision (b) was supported by substantial evidence. Again, we agree.

Section 4906, subdivision (b) states that the "clearance between the guard and the rail or running surface shall be such as will afford maximum protection against crushing injuries," with clearance of one-half inch to be maintained where practicable. Here, the only guard against crushing injuries was a narrow metal bar crossing the front of the tires, approximately 24 inches off the ground. As the trial court noted: "the wheels were not guarded so as to afford <u>any</u> real protection against crushing injuries."

Finally, the trial court determined the Board correctly found the violation "serious." As the trial court observed, the gap between the tire guard and the surfaces

---

[4] On appeal, Clark renews its claim that the gantry crane in question was covered not by section 4906, subdivision (b) but by section 4906, subdivision (c). Clark reiterates that subdivision (c) covers gantry cranes that run on tires. However, subdivision (c) refers to "[c]ontainer-handling, rubber-tired, gantry cranes." There is no evidence in the record, and Clark does not assert, that the gantry crane in question was a container-handling gantry crane. Since we find the Board and the trial court properly found subdivision (b) pertains to Clark's gantry crane, we need not address this issue.

7

upon which the crane operated was openly visible and thus discoverable through reasonably diligent inspection.  In the trial court, Clark argued the gantry crane in question had been in operation for 30 to 35 years without incident; the crane traveled over all types of ground surfaces, and operations often included the presence of a groundsperson working with the crane operator.  The trial court concluded:  "Even if petitioner believed in good faith that the gantry crane's wheels were adequately guarded in this case, based either on the opinions of other operators or on its own accident-free history of operations, such belief is essentially irrelevant here given the openly visible nature of the violation."  We agree and find that the trial court's upholding of the violation as serious was reasonable and supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                           RAYE , P. J.


We concur:


BLEASE , J.


BUTZ , J.